UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher Scott Riel

  v.         Case No. 18-cv-278-LM

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

### REPORT AND RECOMMENDATION

  Christopher Riel moves to reverse the decision of the Acting Commissioner of the Social Security Administration ("SSA") to deny his applications for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, this matter should be remanded to the Acting Commissioner.

### I. Scope of Review

  The scope of judicial review of the Acting Commissioner's decision is as follows:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

1

42 U.S.C. § 405(g) (setting out standard of review for decisions on claims for DIB); see also 42 U.S.C. § 1383(c)(3) (applying § 405(g) to SSI decisions).  However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the standard of review that applies when an applicant claims that an SSA adjudicator made a factual error,

> [s]ubstantial-evidence review is more deferential than it might sound to the lay ear: though certainly "more than a scintilla" of evidence is required to meet the benchmark, a preponderance of evidence is not.  Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003) (internal quotation marks omitted). Rather, "[a court] must uphold the [Acting Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (per curiam).

Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In addition, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Acting Commissioner], not for the doctors or for the courts."  Id. (quoting Rodriguez, 647 F.2d at 222).  Thus, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so

long as it is supported by substantial evidence." Tsarelka v.
Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).

## II. Background

The parties have submitted a Joint Statement of Material
Facts.  That statement, document no. 16, is part of the court's
record and is summarized here, not repeated in full.

Riel was born in 1971.  When he was eight years old, he was
struck by a car and sustained serious injuries to his left leg.
Those injuries required nearly 20 operations, including skin
grafts.  The sites from which donor skin was removed have
remained susceptible to infection ever since.  In addition, at
the hearing on his claims before an Administrative Law Judge
("ALJ"), claimant testified that he was sexually abused by his
sister from the time he was three years old until the time he
was seven.

Riel served in the Army from 1990 through 1994, when he was
honorably discharged.  Thereafter, he worked both as an auto-
repair service technician and as an auto-equipment installer.
He last worked on June 5, 2013.  He says he quit his job as a
service technician due to a lack of concentration and a fear
that poor work could result in "vehicle damage and/or loss of
life."  Administrative Transcript (hereinafter "Tr.") 336.  He
has also reported quitting a job because he could no longer meet
its physical demands, and being fired from a job because of his

"attitude."  At the time of his hearing in September of 2017, Riel had been homeless for approximately five years.

Claimant has an extensive history of treatment for both physical and mental impairments.  That history is well documented in the parties' Joint Statement and in their briefs. For the purpose of recommending a disposition of the parties' pending motions, it is sufficient to list the various diagnoses claimant has received.  With respect to his physical condition, Riel has been diagnosed with, among other things, neck and back pain, mechanical back pain, stable but chronic left leg ulcers, knee and ankle pain, cervicalgia,[1] and low back pain secondary to degenerative changes complicated by significant psychosocial issues.  With respect to his mental condition, he has been diagnosed with posttraumatic stress disorder ("PTSD"), moderate major depressive disorder, anxiety disorder, mood disorder/anxiety, sleep disturbance, and antisocial personality disorder.

In December of 2015, Riel filed the applications for DIB and SSI that are the subject of the matter now before the court. In those applications, he claimed that he became disabled on January 2, 2013, due to depression; PTSD; anxiety; an injury to

---

[1] "Cervicalgia is neck pain."  <u>Bubar v. Astrue</u>, No. 11-cv-107-JL, 2011 WL 6937507, at *2 n.1 (D.N.H. Dec. 5, 2011) (citing <u>Stedman's Medical Dictionary</u> 48, 351 (28th ed. 2006)).

his left leg; arthritis in his knees, neck, and back;
degenerative disc disease; and tendonitis in his right ankle.
He later amended the date on which he claims to have become
disabled, i.e., his alleged onset date ("AOD"), to June 5, 2013.

   1.  Medical Opinions

   The record includes approximately a dozen opinions from
medical professionals on Riel's physical and mental residual
functional capacity ("RFC").[2]  Some of those opinions were
prepared in the context of the applications that resulted in the
decision now under appeal, while others were prepared in the
context of one or more previous applications that were denied.
The opinions relevant to this appeal are described below, to the
extent necessary to support the legal analysis that follows.

   A.  Physical RFC

   In April of 2013, about two months before his AOD in this
case, and in connection with a previous application, Riel
received a consultative physical examination.[3]  In his report on

---

   [2] "[R]residual functional capacity 'is the most [a claimant]
can still do despite [his or her] limitations.'"  Purdy, 887
F.3d at 10 n.2 (quoting 20 C.F.R. § 416.945(a)(1), a regulation
that applies to claims for SSI that is worded identically to 20
C.F.R. § 404.1545(a)(1), which applies to claims for DIB)
(brackets in the original).

   [3] "A consultative examination is a physical or mental
examination or test purchased for [a claimant] at [the SSA's]
request."  20 C.F.R. §§ 404.1519 & 416.919.

that examination, Dr. Ralph Wolf made four diagnoses, including this one: "[e]arly degenerative arthritic changes – lumbar spine." Tr. 528.  Dr. Wolf described the following limitations:

> Any full-time sitting or driving activity with a mild amount of walking should be possible now and for the long-term future.  Because of the patient's early arthritic changes of the lumbar spine, heavy manual labor and prolonged weightbearing are not recommended. Lifting and carrying up to 10 pounds regularly is permitted.

Id.

In March of 2016, Riel received a second consultative physical examination, in connection with the applications underlying this appeal.  In his report on that examination, Dr. William Kirmes made several diagnoses, including these: (1) "[s]ome degenerative arthritis in [the] lower back and neck as seen on x-ray with evidence of some degenerative disc disease," Tr. 854; and (2) mechanical back pain.  Dr. Kirmes described the following limitations:

> Out of an eight-hour day, he can sit for four hours, stand for three hours, walk for one to two hours limited by knee pain and some lower back fatigue and pain.  He can lift 35 pounds and carry 20 pounds. Bending is limited due to his knee pain.

Id.

In May of 2016, Lori Fox, an advanced practice registered nurse ("APRN"), who had treated Riel, completed an Arthritis Medical Source Statement on him.  In it, she opined that Riel could: (1) sit for 30 minutes at a time before needing to stand

up; (2) stand for 15 minutes at a time before needing to sit down; (3) sit for less than two hours in an eight-hour workday; and (4) stand/walk for less than two hours in an eight-hour workday. She also opined that Riel was likely to be absent from work more than four days per month as a result of his impairments or treatment for them.[4]

The SSA's processing of Riel's 2015 applications did not include an assessment of his physical RRC by a state-agency medical consultant. Rather, the physical RFC assessment reported on Riel's Disability Determination Explanation forms was completed by a single decisionmaker ("SDM").[5] While the SDM's RFC assessment is of no moment,[6] it is worth noting that the SDM determined that Riel had two severe physical impairments, degenerative disc disease and osteoarthritis.

---

[4] In addition to the three opinions described above, the record also includes opinions on claimant's physical RFC that Fox expressed in: (1) a February 2015 letter; and (2) a February 2017 Physical Medical Source Statement.

[5] "A single decisionmaker is an employee of the Social Security Administration who has no medical credentials." Chambers v. Colvin, No. 15-cv-150-JL, 2016 WL 614405, at *4 (D.N.H. Feb. 16, 2016) (citing Stratton v. Astrue, 987 F. Supp. 2d 135, 138 n.2 (D.N.H. 2012); Goupil v. Barnhart, No. 03-34-P-H, 2003 WL 22466164, at *2 n.2 (D. Me. Oct. 31, 2003)).

[6] That is because "an RFC assessment by a[n] SDM does not qualify as substantial evidence on which an ALJ may rely when making an RFC assessment." Chambers v. Colvin, 16-cv-087-LM, 2016 WL 6238514, at *6 (D.N.H. Oct. 25, 2016) (quoting Stratton, 987 F. Supp. 2d at 152) (other citations omitted).

B.  Mental RFC

The record includes several opinions on claimant's mental RFC, including those expressed in: (1) a mental RFC assessment by a non-examining state-agency psychological consultant, Dr. Lisa Fitzpatrick; and (2) two Mental Impairment Questionnaires completed by claimant's treating psychiatrist, Dr. Alexandre Blaivas.[7]

In June of 2017, Dr. Blaivas, who had treated Riel for two months, completed a Mental Impairment Questionnaire.  In it, he listed diagnoses of PTSD and depressive disorder, not otherwise specified ("NOS").  As clinical findings in support of his opinions, he listed depressed mood and constricted affect.  Dr. Blaivas offered numerous opinions in his questionnaire, including his opinion that Riel would be absent from work more than four days per month because of his impairments or treatment for them, and indicated that he based that opinion on Riel's "poor history of appointment attendance due to both physical and emotional issues," id.  In March of 2017, Dr. Blaivas completed a second Mental Impairment Questionnaire.  In it, he noted that

---

[7] In addition to the three opinions mentioned above, the record also includes opinions on Riel's mental RFC, expressed by: (1) Dr. Juliana Read, in a report on a March 2013 consultative examination; (2) Dr. Phat Nguyen, in a July 2013 form submitted in support of an application for Financial Assistance for Needy Families; (3) APRN Dawn Spann-Weitz, in an October 2015 letter; and (4) Dr. Denise Moquin, in a report on a March 2016 consultative examination.

he had seen Riel five times since April of 2016.  He gave

diagnoses of PTSD and depressive disorder NOS and identified 15

different symptoms of those mental impairments.  As in his

previous questionnaire, Dr. Blaivas opined that Riel would miss

work more than four days a month due to his impairments or

treatment for them.

    2.  <u>Hearing Testimony</u>

After the SSA denied Riel's applications, he received a

hearing before an ALJ.  At that hearing, the ALJ took testimony

on claimant's physical impairments from an orthopedic surgeon,

Dr. Henry Urbaniak.  In response to a question from the ALJ

asking him to give an overview of the medical record from the

perspective of an orthopedic surgeon, Dr. Urbaniak responded:

> . . . I haven't even addressed it.  I can do what I
> can with this, Judge.  I still have the same limited
> objective data.  The individual really started his
> career in medicine at age eight when he got struck by
> a car, of course, that's long before the period of
> time we're discussing, but it's interesting.  He had a
> soft tissue injury of the leg and then he went on to
> work and what have you.  He complained of backache.
> He complains of some neck aches.  His imaging studies
> show very limited degenerative changes.  We have three
> X-rays of the lumbar spine, which show very little, if
> anything.  Objectively, we have a normal neurologic
> examination.  There is at 18F [i.e., Dr. Kirmes'
> examination report] some bizarre findings that I can't
> understand from somebody about the limited range of
> motion in a small segment of the thoracic spine, which
> I don't know how anybody could figure out.  And they
> did the same thing down the lumbar spine.  So he was
> creating a great story of telling me how one segment
> of his spine wasn't working with his eyes.  I couldn't
> figure it out, but there really just isn't anything in

here that's of substance objectively.  And that's
about it, really.  He's got psychiatric problems as
his Counselor or legal expert pointed out.  I think
the critical thing, neurologic exam is normal, so.  X-
rays of back normal, pretty much.  I don't really have
much more than that.  I mean he doesn't meet or equal
any listing that I can give you.

Tr. 51-52.  When the ALJ asked Dr. Urbaniak whether there would

"be any limitations that [he] would opine based upon this record

and [his] experience, education and training as an orthopedic

surgeon," Tr. 52, the following exchange ensued:

        A  Well, the only way – well, there's – at 20F
        [i.e., Fox's Arthritis Medical Source Statement],
        there is a functional capacity statement, and in this,
        I don't know how they figured it out, so this is
        amazing.  The individual could sit 30 minutes, stand
        15 minutes at one time, and in a two-hour day [sic],
        he could two of eight [sic].  I don't know how they
        came up with that.  It's not substantiated again by
        anything objectively in this file.  I didn't . . .
        even see, unless I missed it, any lifting or carrying
        capabilities.  So his limitations, I don't know, I'd
        just have to guess at it.  There's not enough data for
        me to give you what I could personally consider an
        adequate – limitations and/or impairments, whatever
        you'd like to call them on this individual.

        Q  Does the objective evidence support any
        limitations?

        A  I don't see any, Judge.

Tr. 52-53.  However, while he addressed the limitations in Fox's

Arthritis Medical Source Statement, which did not include any

limitations on lifting or carrying, Dr. Urbaniak did not address

any of the limitations that Dr. Kirmes identified in his report,

including a 35-pound lifting limitation that results in a

capacity that falls short of the 50-pound lifting requirement

for medium work.[8]  Nor did Dr. Urbaniak address the even more

restrictive lifting and carrying limitations in Dr. Wolf's

examination report.  Thus, Dr. Urbaniak's testimony was based

upon a significantly incomplete view of the record.

In addition to taking testimony from a medical expert, the

ALJ also took testimony from a vocational expert ("VE").  He

asked the VE a hypothetical question that posited an individual

he described in the following way:

> [A]ssume that we have a 45 year old, then 41, with a
> high school diploma, claimant' work history, no
> physical limitations, but is limited from detained
> instructions, so he can understand, remember and carry
> out up to limited detailed instructions.  His
> persistence and pace may be affected on a temporary
> basis but not an unacceptable level, would not be off
> task more [than] 10% of the workday and could
> otherwise sustain concentration, persistence and pace
> for the typical two-hour periods of an eight-hour
> workday and 40-hour workweek.  He would be limited
> from intense and/or frequent social interactions with
> the public, co-workers and supervisors, but could
> tolerate routine and ordinary social interactions.

Tr. 82-83.  The VE testified that a person with the RFC in the

ALJ's hypothetical question could not do claimant's past work as

an automobile mechanic, due to his mental limitations, but could

do two jobs performed at the medium exertional level (hospital

---

[8] See 20 C.F.R. §§ 404.1567(c) & 416.967(c) (specifying that medium work require the ability to lift 50 pounds).

cleaner and hand packer) and one job performed at the light exertional level (cleaner, housekeeping).

In response to question from claimant's counsel, the VE testified that none of the jobs she identified could be performed by a person who was absent from work more than one day a month on a regular basis.[9]

C.  <u>The ALJ's Decision</u>

After claimant's hearing, the ALJ issued a written decision.  In it, he determined that claimant had no severe physical impairments, but had two severe mental impairments, depression and PTSD.  Next, he determined that none of claimant's impairments, either alone or in combination, met or medically equaled the severity of any of the impairments on the SSA's list of impairments that are per se disabling. Accordingly, the ALJ went on to assess Riel's RFC, and determined that claimant could

> perform a full range of work at all exertional levels
> but with the following nonexertional limitations: he
> cannot carry out detailed instructions, but can
> perform simple, routine tasks; although he may
> temporarily be distracted, he would not be off-task
> more than 10% of the workday and can sustain
> concentration, persistence and pace for two-hour
> segments throughout an eight-hour workday; and cannot
> tolerate frequent, intense interactions with others,
> but can engage in routine, ordinary social

---

[9] Such a limitation appears in Lori Fox's Arthritis Medical Source Statement, <u>see</u> Tr. 866, and in both of Dr. Blaivas's Mental Impairment Questionnaires, <u>see</u> Tr. 869, 883.

interactions with coworkers, supervisors and the
public.

Tr. 26.  After determining that claimant's mental RFC precluded
him from doing his former work, the ALJ, in reliance upon the
testimony of the VE, found that claimant did retain the physical
and mental RFC to perform the medium-duty jobs of cleaner and
hand packer and the light-duty job of cleaner.  On that basis,
he determined that claimant was not under a disability from June
5, 2013, through the date of his decision, which was November 1,
2017.

### III. Discussion

A.  The Legal Framework

To be eligible for disability insurance benefits, a person
must: (1) be insured for DIB; (2) not have reached retirement
age; (3) have filed an application; and (4) be under a
disability.  42 U.S.C. § 423(a)(1)(A)-(D).  To be eligible for
supplemental security income, a person must be aged, blind, or
disabled, and must meet certain requirements pertaining to
income and assets.  42 U.S.C. § 1382(a).  The only question in
this case is whether the ALJ correctly determined that Riel was
not under a disability from June 5, 2013, through November 1,
2017.

To decide whether a claimant is disabled for the purpose of
determining eligibility for either DIB or SSI, an ALJ is

required to employ a five-step sequential evaluation process.

See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Purdy, 887 F.3d at 10 (quoting Seavey v. Barnhart, 276 F.3d 1, 5

(1st Cir. 2001); citing 20 C.F.R. § 416.920).

At the first four steps in the sequential evaluation

process, the claimant bears both the burden of production and

the burden of proof.  See Purdy, 887 F.3d at 9 (citing Freeman

v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen

v. Yuckert, 482 U.S. 137, 146 (1987).  He must prove he is

disabled by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).[10]

---

[10] At step five, the burden shifts to the Acting
Commissioner to identify jobs that the claimant can still
perform, see Seavey, 276 F.3d at 5 (citing Arocho v. Sec'y of
HHS, 670 F.2d 374, 375 (1st Cir. 1982)), but the Acting
Commissioner's step-five determination is not at issue here, so
there is no need to describe the mechanics of step five.

B.   <u>Riel's Claims</u>

Riel claims that the ALJ erred by: (1) determining, at step two, that he had no severe physical impairments; (2) improperly evaluating the medical-opinion evidence when assessing both his physical and mental RFC; and (3) improperly assessing his statements about the symptoms of his impairments.  Riel's first claim has merit, as does the portion of his second claim that pertains to the ALJ's assessment of his physical RFC.

1.   <u>Step Two</u>

Riel claims that the ALJ erred by finding that he had no severe physical impairments.  The Acting Commissioner disagrees, arguing that: (1) substantial evidence supports the ALJ's findings; and (2) even if the ALJ erred at step two, his error was harmless because he continued with the sequential evaluation process and considered all of claimant's impairments, both severe and non-severe, when determining his physical RFC.  The Acting Commissioner is mistaken.

"[T]he Step 2 severity requirement is . . . a <u>de minimis</u> policy, designed to do no more than screen out groundless claims."  <u>Garneau v. Berryhill</u>, No. 16-cv-448-SM, 2017 WL 4512160, at *7 (D.N.H. Oct. 10, 2017) (quoting <u>McDonald v. Sec'y of HHS</u>, 795 F.2d 1118, 1124 (1st Cir. 1986); citing Social Security Ruling 85-28, 1985 WL 56856 (S.S.A. 1985)).  Thus, "a finding of 'non-severe' is only to be made where medical

evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work," id. (citations and internal quotation marks omitted).  But, "[e]rrors at Step Two are harmless as long as the ALJ found at least one severe impairment, continued on with the sequential analysis, and considered the effect of all impairments [both severe and non-severe] on the claimant's functional capacity."  Id. (quoting Therrien v. Berryhill, No. 16-cv-185-LM, 2017 WL 1423181, at *4 (D.N.H. Apr. 21, 2017); citing Fortin v. Colvin, No. 3:16-cv-30019-KAR, 2017 WL 1217117, at *10 (D. Mass. Mar. 31, 2017)).

After identifying claimant's depression and PTSD as severe impairments, the ALJ's decision continues:

> [O]ther diagnoses appear in the record.  The existence of [a] diagnosis, however, does not indicate the existence of severity or limitation in function . . . .  It is the burden of the claimant to provide medical evidence that an alleged impairment limits the ability to work (20 CFR 416.912(a).  There is no provider or other opinion that these other diagnoses are severe.

Tr. 21 (emphasis added).

In the next paragraph of his decision, the ALJ noted some of the clinical findings from Dr. Wolf's 2013 consultative examination.  But that paragraph says nothing about Dr. Wolf's opinions that Riel was: (1) precluded from performing "heavy manual labor and prolonged weightbearing," Tr. 528; (2) limited to "[l]ifting and carrying up to 10 pounds regularly," id.; and

16

(3) capable of "full-time siting or driving . . . with a mild
amount of walking," id.  And the ALJ did not mention any of the
findings from Dr. Kirmes' consultative examination, much less
Dr. Kirmes' opinions that Riel could: (1) "sit for four hours,
stand for three hours, [and] walk for one to two hours; Tr. 854;
and (2) "lift 35 pounds and carry 20 pounds," id.

       Plainly, both Dr. Wolf and Dr. Kirmes opined that Riel's
physical impairments had "more than a minimal effect on [his]
ability to work," Garneau, 2017 WL 4512160, at *7.  Yet the ALJ
found that the record included "no . . . opinion that
[claimant's physical] diagnoses [were] severe," Tr. 21 (emphasis
added).  That finding is not supported by substantial evidence.
See Purdy, 887 F.3d at 13 (describing substantial evidence as
evidence that a reasonable mind could accept as adequate to
support a conclusion).  Moreover, there is no medical opinion in
the record suggesting that claimant had no severe physical
impairments, and even the SSA's SDM concluded that both
claimant's degenerative disc disease and his osteoarthritis were
severe impairments.  Accordingly, the ALJ erred at step two by
finding that claimant had no severe physical impairments.

       Of course, a step-two error can be harmless when an "ALJ
[finds] at least one severe impairment, continue[s] on with the
sequential analysis, and consider[s] the effect of all
impairments on the claimant's functional capacity," Garneau,

2017 WL 4512160, at *7.  For her part, the Acting Commissioner
acknowledges that an "ALJ must consider all non-severe
impairments."  <u>McDonough v. U.S. SSA, Acting Comm'r</u>, No. 13-cv-
164-PB, 2014 WL 2815782, at *11 (D.N.H. June 23, 2014).

Here, however, when assessing Riel's physical RFC, the ALJ
did not mention degenerative disc disease at all and mentioned
arthritis only once, when explaining why he gave no weight to
the opinions that Lori Fox gave in her Arthritis Medical Source
Statement.  Moreover, unlike the ALJ in <u>McDonough</u>, who said
enough in his step-two analysis about the claimant's non-severe
impairments to satisfy the SSA's obligation to consider those
impairments when assessing the claimant's RFC, <u>see</u> 2014 WL
2815782, at *11, the ALJ in this case said nothing in his step-
two analysis that would count as an adequate consideration of
claimant's degenerative disc disease or arthritis for the
purposes of assessing his RFC.  So, while the ALJ could have
rendered his step-two error harmless by adequately considering
claimant's purportedly non-severe impairments later in the
sequential evaluation process, he did not do so.  Thus, this is
one of those relatively rare cases in which a step-two error was
not harmless, and merits a remand.

2. <u>The ALJ's Assessment of Riel's Physical RFC</u>

Riel also claims that the ALJ made multiple errors in
evaluating the medical-opinion evidence relating to his physical

impairments.  Among other things, he claims that "the ALJ did not properly assess the opinion evidence in accordance with the factors in 20 CFR 404.1527 and 416.927."  Cl.'s Mem. of Law (doc. no. 11-1) 12.  Claimant is correct.

Because "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record," Manso-Pizarro, 76 F.3d at 17, an ALJ may not rely on such evidence when determining a claimant's RFC "until its functional significance is assessed by a medical expert," Marino v. U.S. SSA, No. 17-cv-179-JL, 2018 WL 4489291, at *4 (D.N.H. Sept. 19, 2018) (quoting Giandomenico v. U.S. SSA, Acting Comm'r, No. 16-cv-506-PB, 2017 WL 5484657, at *12 (D.N.H. Nov. 15, 2017); citing Manso-Pizarro, 76 F.3d at 17).  The SSA, in turn, has promulgated rules that govern how its adjudicators are to evaluate opinions from medical experts on the functional effects of a claimant's impairments.

Riel filed his applications for benefits in December of 2015, so the rules that apply to the evaluation of the medical opinions in this case are those set out in 20 C.F.R. §§ 404.1527 and 416.927.[11]  Those rules establish a hierarchy under which, as a general matter: (1) the greatest weight – and sometimes controlling weight – is accorded to opinions from medical

---

[11] For claims that were filed on or after March 27, 2017, the applicable rules are set out in 20 C.F.R. §§ 404.1520c and 416.920c.

sources who have treated a claimant; (2) lesser weight is given
to opinions from sources who have examined but not treated a
claimant; and (3) the least amount of weight is given to
opinions from sources who have neither treated nor examined a
claimant.  See 20 C.F.R. §§ 404.1527(c)(1)-(2) & 416.927(c)(1)-
(2).  Those regulations also list the factors that an
adjudicator should consider when evaluating a medical opinion:
(1) the length of the treatment relationship and the frequency
of examination; (2) the nature and extent of the treatment
relationship; (3) the degree to which the medical source
presents evidence to support his or her opinion; (4) the degree
to which the opinion is consistent with the record as a whole;
(5) the medical source's area of specialty; and (6) other
factors, such as the source's familiarity with the SSA's
disability programs.  See 20 C.F.R. §§ 404.1527(c)(2)-(6) &
416.927(c)(2)-(6).

        As noted, the record in this case contains several medical
opinions on Riel's physical RFC.  Of particular relevance are
the opinions that Dr. Kirmes expressed in his report on the
consultative examination he administered.  According to Dr.
Kirmes, claimant had the physical RFC to perform far less than
the full range of work at all exertional levels, which is the

RFC the ALJ attributed to claimant.[12]  The ALJ gave "little weight" to Dr. Kirmes' opinions and gave a single reason for doing so: "the evidence does not show that the claimant has a severe physical impairment (Testimony of Dr. Urbaniak)."  Tr. 31.  There are at least two problems with the ALJ's evaluation of Dr. Kirmes' opinions.

First, while the applicable regulations direct SSA adjudicators to "consider all of the . . . factors [set out in them] in deciding the weight [to] give to any medical opinion," 20 C.F.R. §§ 404.1527(c) & 416.927(c) (emphasis added), the ALJ in this case mentioned none of those factors when he decided to give Dr. Kirmes' opinions little weight.  A failure to mention one or two of the six factors might be an excusable error.  Cf. Paradise v. Astrue, No. 1:10-cv-236-JAW, 2011 WL 1298419, at *3 (D. Me. Mar. 31, 2011) (citing Braley v. Barnhart, No. 04-176-B-W, 2005 WL 1353371, at *4 (D. Me. June 7, 2005)), R. & R. adopted by 2011 WL 1481315 (Apr. 19, 2011).  But a failure to consider any of them is not.  Second, the sole explanation the ALJ did give, in lieu of considering any of the relevant factors, is itself problematic.  The ALJ discounted Dr. Kirmes'

---

[12] The limitations on lifting (35 pounds), carrying (20 pounds), sitting (four hours), standing (three hours), and walking (one to two hours) that Dr. Kirmes identified would allow claimant to perform, at most, some limited range of light or sedentary work.  See 20 C.F.R. §§ 404.1567(a)-(c) & 416.967(a)-(c).

opinions because, in his view, the evidence failed to show that claimant had any severe physical impairments.[13]  The ALJ determined that claimant had no severe physical impairments because the record included no opinion that claimant's physical impairments were severe.  But, at least two acceptable medical sources, including Dr. Kirmes, had opined that claimant did have severe physical impairments.  Thus, the ALJ appears to have discounted Dr. Kirmes' opinion that claimant had severe physical impairments because the record included no opinions that claimant had any severe physical impairments.  That reasoning is both circular and belied by the record.  In short, the ALJ's failure to evaluate Dr. Kirmes' opinions in accordance with the applicable regulations and the fallacious reasoning he employed to discount Dr. Kirmes' opinions are errors of law that require a remand.

Beyond that, even if the ALJ had properly discounted Dr. Kirmes' opinions, it is not at all clear that his assessment of claimant's physical RFC is adequately supported.  An ALJ must rely upon the opinion of a medical expert when assessing a

---

[13] Discounting opinions about the functional effects of claimant's physical impairments because those impairments were not severe, which at least hints at an understanding that non-severe impairments, by definition, cannot have functional effects, would seem to fly in the face of the ALJ's obligation, when assessing a claimant's RFC, to "consider all non-severe impairments," McDonough, 2014 WL 2815782, at *11.

claimant's RFC unless "the evidence shows a 'relatively mild physical impairment posing, to the layperson's eye, no significant restrictions.'"  Marino, 2018 WL 4489291, at *4 (quoting Giandomenico, 2017 WL 5484657, at *4; Roberts v. Barnhart, 67 F. App'x 621, 623 (1st Cir. 2003)).  This is not a case in which the ALJ could have assessed claimant's RFC without the benefit of an expert medical opinion, and the Acting Commissioner does not argue to the contrary.  However, it is not clear that there is any medical opinion that supports the ALJ's determination that claimant had the physical RFC "to perform a full range of work at all exertional levels," Tr. 26.

In his decision, the ALJ referred to "the administrative findings of fact made by the state agency physicians," Tr. 30, which he characterized as "opinions . . . from non-examining and non-treating expert sources," id.  But at the initial level of review, claimant's physical RFC was not assessed by a state-agency physician; it was assessed by an SDM.  So, the ALJ's reference to "state agency physicians," and his references in the same paragraph to state-agency medical consultants and state-agency medical professionals are unclear, at best.

The only medical source who has said anything that supports the ALJ's physical RFC is Dr. Urbaniak.  In his step-two analysis, the ALJ stated that "Dr. Urbaniak reviewed the entire medical record and testified that the evidence does not support

a finding that the claimant has any physical limitations related to work," Tr. 21, and the Acting Commissioner defends the ALJ's decision by arguing that given the ALJ's authority to resolve conflicts in the evidence, "[t]he ALJ was entitled to rely on Dr. Urbaniak's opinion," Resp't's Mem. of Law (doc. no. 13-1) (citing Purdy, 887 F.3d at 13; Shaw v. Sec'y of HHS, 25 F.3d 1037 (unpublished table decision), 1994 WL 251000, at *3-4 (1st Cir. June 9, 1994)).  But it is far from clear that Dr. Urbaniak's hearing testimony amounts to an actual opinion on claimant's physical RFC.

To be sure, Dr. Urbaniak testified that the objective evidence did not support any limitations.  But he did so immediately after testifying that "[t]here's not enough data for me to give you what I could personally consider an adequate – limitations and/or impairments, whatever you'd like to call them on this individual."  Tr. 53.  Thus, taken in context, the statement by Dr. Urbaniak on which the ALJ relies would appear to be less of an RFC assessment, i.e., an affirmative statement concerning "the most [that Riel] can still do despite [his] limitations," Purdy, 887 F.3d at 10 n.2, and more in the nature of a criticism of the RFC assessments by Dr. Kirmes and Lori Fox.  Plainly, Dr. Urbaniak came nowhere close to providing a function-by-function assessment of claimant's physical RFC. That is a problem.  See MacKenzie v. Colvin, No. 15-cv-198-JD,

2016 WL 727115, at *3 (D.N.H. Feb. 23, 2016) (ruling that ALJ's RFC assessment was not supported by substantial evidence in the record when ALJ gave great weight to medical opinion that "did not provide a function by function assessment").

Moreover, even if Dr. Urbaniak's testimony did somehow qualify as a medical opinion on Riel's physical RFC, there is no indication in the ALJ's decision that <u>he</u> treated it as such. The SSA regulations provide that SSA adjudicators "will evaluate every medical opinion [the SSA] receive[s]."  20 C.F.R. §§ 404.1527(c) & 416.927(c).  In the section of his decision in which he determined claimant's RFC and explained the weight he gave to a dozen different medical opinions, the ALJ said nothing about the amount of weight he gave to any opinion by Dr. Urbaniak.  In fact, the ALJ mentioned Dr. Urbaniak only once, when he said that Dr. Urbaniak's testimony that "the evidence does not show that the claimant has a severe physical impairment," Tr. 31, was the reason why he discounted the opinions on claimant's RFC provided by Drs. Wolf and Kirmes.  If the ALJ did not treat Dr. Urbaniak's testimony as a medical opinion that supports his RFC, it hardly seems appropriate for the court to do so.  And, without support from a medical opinion, the ALJ's RFC assessment cannot stand.

### 3.   The ALJ's Assessment of Riel's Mental RFC

Riel also claims that the ALJ erred in assessing his mental RFC by: (1) purporting to adopt Dr. Fitzpatrick's opinions on his mental RFC, but departing, without explanation, from the limitations she expressed; and (2) failing to give controlling weight to the opinions in Dr. Blaivas's Mental Impairment Questionnaires.  Because this matter is being remanded on other grounds, there is no need for a full analysis of the ALJ's assessment of claimant's mental RFC, but for the benefit of the Acting Commissioner on remand, the court offers the following observations about the ALJ's evaluation of Dr. Blaivas's opinions.

In both of his Mental Impairment Questionnaires, Dr. Blaivas opined that claimant was likely to miss more than four days of work per month due to his impairments or treatment for them, see Tr. 869, 883, and in the earlier of the two questionnaires, he attributed claimant's probable absenteeism to both his mental and physical impairments.[14]  At claimant's hearing, the VE testified that such a level of absenteeism would preclude any work.  See Tr. 85.  If the ALJ had given that

---

[14] In her Arthritis Medical Source Statement, Lori Fox also opined that claimant was likely to miss more than four days of work per month, due to his physical impairments.

opinion controlling weight, it would have led to a determination
that claimant was disabled.

However, the ALJ did not even mention Dr. Blaivas's opinion
on absenteeism nor did he expressly perform a controlling-weight
analysis, see 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2), on
Dr. Blaivas's opinions.  Furthermore, to the extent that the ALJ
attempted to justify his decision to discount Dr. Blaivas's
opinions on grounds of lack of support or inconsistency with the
record as a whole, see 20 C.F.R. §§ 404.1527(c)(3)-(4) &
416.927(c)(3)-(4), his justification seems to fall short.  While
the ALJ pointed out that Dr. Blaivas's "clinical observations .
. . consistently were that the claimant presented as casually
dressed, calm, polite, cooperative, alert, fully oriented, with
normal speech, organized thought processes, no cognitive
disturbances, and with only a mildly depressed mood," Tr. 30, he
does not say anything about the relationship between those
observations and Dr. Blaivas's opinion that claimant was likely
to miss more than four days of work per month.  On remand, a
more robust evaluation of Dr. Blaivas's opinions would be
helpful.

## IV. Conclusion

For the reasons detailed above, the Acting Commissioner's
motion for an order affirming her decision, document no. 13,
should be denied, and Riel's motion to reverse that decision,

document no. 11, should granted to the extent that this matter is remanded to the Acting Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The 14-day period may be extended upon motion.  Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

January 25, 2019

cc:  Janine Gawryl, Esq.
     Rami M. Vanegas, Esq.